COPE, J.
William Patrick Loy, Jr., appeals an order assessing a child support arrearage. We affirm in part and reverse in part.
I.
The appellant father and appellee mother divorced in 1992. There were two children of the marriage. The final judgment incorporated a marital settlement agreement.
In 1994, there was an agreed modification (“the First Modification”) which established rotating custody for the two children. The children were to reside with the mother from January 1 through June 30 of each year, and with the father from July 1 through December 31.
Child support was $825 per month. The father’s pro rata share was 75% and the mother’s pro rata share was 25%.
Under the agreement, the nonresidential parent would pay the residential parent. Thus, from January through June, the father would pay child support to the mother. From July through December, the mother would pay the father.
In 1997, the parties entered into another modification (“the Second Modification”). It states:
2. CHILD SUPPORT. The amount of child support shall remain at the agreed amount of $825.00 per month. However, in light of the parties’ joint *873 custodial arrangement in which the Mother serves as primary custodian from January 1 until June 30 of each year and the Father serves as primary custodian from July 1 until December 31 of each year, and in consideration of the Mother’s increased earning capacity, the parties agree to fully support the children while each serves as primary custodian; during the six months that either the Mother or the Father is not serving as primary residential custodian of the children, then that parent shall not be responsible for payment of any child support.
R. 320.
In 1998, the parties deviated from the 50-50 rotating custody schedule. The children were with the mother, as agreed, from January through June, 1998. The children resided with the father from July 1 to Thanksgiving 1998. After Thanksgiving of 1998, the children resided continuously with the mother.
A dispute arose between the parties about how to interpret the Second Modification under the circumstances. The mother took the position that the father was obligated to pay her child support at the stated rate of $825 per month from Thanksgiving of 1998 through December of 2000.[1] The father took the position that the Second Modification eliminated any requirement for him to pay child support and that he owed the mother nothing for the period Thanksgiving 1998 through December 2000.
The mother filed a motion for enforcement of the Second Modification and for contempt. The motion was referred to a general master sitting as a child support hearing officer. The hearing officer denied the motion for enforcement. The hearing officer accepted the argument that the Second Modification eliminated any obligation of either party to pay child support to the other. The hearing officer took the position that until such time as one of the parties moved for a further modification, the father did not owe any child support to the mother.
The circuit court vacated the hearing officer’s report. The court ruled that under the Second Modification, the father owed $825 per month for the period December 1998 through December 2000, less credit for amounts already paid. The court set the arrearage at $16,500 plus interest. The father has appealed.
II.
We affirm that part of the trial court’s order which vacated the ruling of the hearing officer. We agree with the trial court that the hearing officer interpreted the parties’ Second Modification too narrowly. See Gumberg v. Gumberg, 755 So.2d 710, 712 (Fla. 4th DCA 1999); Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996); Schafroth v. Schafroth, 610 So.2d 649 (Fla. 3d DCA 1992).
When the Second Modification is read as whole, the parties reaffirmed that the child support amount for the two children was $825 per month. They reaffirmed their rotating custody arrangement. They stated that the mother’s income had increased. They said that “the parties agree to fully support the children while each serves as primary custodian; during the six months that either the Mother or the Father is not serving as primary residential custodian of the children, then that parent shall not be responsible for payment of any child support.”. R. 320. (Emphasis added).
This language does not accomplish an unconditional termination of child support. *874 Instead, the abatement of the obligation to pay depended on each parent’s serving as primary residential parent for six months of each calendar year.
Assuming the parties carried out the agreement as contemplated, each parent would assume responsibility for six months of child support at $825, for a total of $4,950 per calendar year. This was a SO-SO child support agreement.
Once the parties deviated from the six-month rotating custody arrangement, the question is whether the father owed the mother child support to the extent that he was not fulfilling his contractual obligation. We agree with the trial court that the answer is yes.
III.
The next question is how to calculate the father’s child support obligation where he did not serve as primary residential custodian for a full six months in 1998, 1999, and 2000.
The trial court calculated the arrearage at $825 per month for December 1998 through December 2000, but we believe that is not a correct calculation.
For the 1998 calendar year, the mother was the primary residential parent for seven months (January-June and December, 1998)[2] while the father was the residential parent for five months (July-November 1998). Since the mother had custody for a month that the father should have paid for in 1998, his arrearage for 1998 is $825.
For 1999 and 2000, the original rotating custody agreement was for the mother to have custody for January to June, but she had custody for the entirety of both years. Thus, the father owes her $825 per month for six months in 1999, six months in 2000, and the one month in 1998. This is a total of thirteen months, less credit for five months already paid.[3] Thus, the total number of months for which the father owes child support is eight months. This is an arrearage of $6,600 plus interest.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

. The parties reached a new child support agreement ("the Third Modification”) effec-five January, 2001.

. The last few days of November 1998 are immaterial and may be disregarded.

. The order on appeal and the transcript of the hearing held February 12, 2003 indicate that for 2000 the father paid for 5 months: April and September through December.